JAMES MADISON SIMMONS v. THE STATE.

1. CONFESSIONS. *Evidence.   Competency.*
   Competency of confessions is a preliminary inquiry for the court, which should not admit them unless they clearly appear to have been made in such a manner as to be evidence, and should exclude them after they are admitted if it appears that they were improperly obtained.

2. SAME.   *Promise of favor.*
   Admissions by a prisoner charged with murder that he committed the crime are incompetent if fairly traceable as the inciting cause to a promise made by the chief prosecuting attorney that if the prisoner would confess he would do all he could to save him.

3. SAME.   *Voluntary statement.*
   Confessions made to other persons by the prisoner after the promise has been withdrawn by the attorney, are admissible in evidence at his trial for the murder.

4. SAME.   *Accused as witness.   Mental condition.*
   If the confessions are introduced in evidence by the State, the accused, who, under the statute, has the right to testify in his own behalf, should be allowed to explain his mental condition when he confessed.

5. SAME.   *Instructions.   Jury.*
   The question of the competency of confessions should not be submitted to the jury, and instructions which have this effect are erroneous.

6. CONSPIRACY. *Murder. Declarations.*
   If the case for the State is a conspiracy to murder consummated, conversations of one of the alleged conspirators after the assassination, are inadmissible in evidence at the trial of another.

7. SAME. *Community of guilt.*
   If persons conspire to murder a man and go to his residence to consummate their common design, and one of them shoots him, all are equally guilty.

8. ALIBI. *Not to be discredited by instruction.*
   It is erroneous to charge the jury that, owing to the difficulty with which such fraud and perjury are detected, they must view the defense of an alibi with peculiar suspicion and distrust.

APPEAL from the Circuit Court of Chickasaw County.

HON. J. W. BUCHANAN, Judge.

About nine o'clock on the night of September 14, 1881, General W. F. Tucker, while sitting alone in the study of his residence at Okalona, was killed by a ball which was shot through the window and penetrated his heart. Persons attracted by the report came to the room and found his body. An immediate search disclosed a round hole in one of the window panes about three feet from the floor, and outside tracts of a peculiar kind upon the ground near the window.

About the hour of the murder the tramping of rapidly moving horses was heard on a bridge about one hundred and seventy-five yards north of the residence. One of the searching parties went to the house of a man named Houston Parish, whose son General Tucker had shortly before whipped and whom he had warned to leave the town. Parish was not found, but his bed was warm. Next morning, while in custody, charged with the assassination, some one asked to be allowed to examine his feet, and Parish said: "These are not the boots I had on last night." His feet were then examined and found to correspond with the tracks at the window. He was put in jail and was harshly treated. Then he made a confession that he was the assassin.

On September 25, 1882, James Madison Simmons, T. Richard Shaw, and Smith Shaw were indicted for the murder of W. F.

Tucker. The State asked and obtained a severance of their trials. In the case of the appellant, the State, after proving the *corpus delicti*, proposed by A. J. Chafin to show confession of guilt by the defendant, whereupon the defendant asked that he be allowed to introduce evidence that the confessions were made while in jail and under influences brought to bear on him by Chafin, the officers of the jail, and the attorneys for the prosecution, calculated to convey to his mind an intimation that it would be better for him to confess that he had committed the crime and worse for him if he did not; that if he would tell the whole truth they would try and save him; that the pretended confessions were not free and voluntary, and that he be allowed to show this before any evidence of them was admitted. The court refused to allow this, but informed the accused that he could show by the State's witnesses or his own any circumstances tending to the exclusion or avoidance of the confessions after they were introduced, and that if at any time during the trial it appeared that the confessions were improperly obtained, they would be excluded. To this action of the court the appellant excepted.

Testimony was then given by Chafin that the defendant hired himself to work on the witness's farm; that he told the witness he was from White County, Texas, where he had killed two men and he was afraid he would be arrested; that he was apparently alarmed at every one's approach, and if they were strangers hid himself, and on one occasion fled at the approach of some persons; that one day, returning from a neighbor's house, he asked the witness if he had heard of that old General being killed in Okalona; that the witness said if he knew what General he spoke of he could tell about it; that the defendant then seemed to be trying to recall the name, and kept repeating, " General—General," when finally it seemed to come back to him, and he said " General Tucker;" that on one occasion he refused to go to Okalona with the excuse that he would be drowned crossing the ferry, although the witness offered to pay him double price for the time consumed on the trip; that afterward the defendant was arrested upon the charge of carrying concealed weapons; that he was convicted and he then grew very

uneasy and asked if one of the prosecuting attorneys was not sheriff of Chickasaw County; that when told he was, he said that he did not want to go to jail, that they had something else, and he was not arrested merely for carrying a concealed pistol, but that something was behind it all; that the prisoner was put in jail and that the next evening the witness was incarcerated with him, and tried to gain his confidence and told the defendant that if he made any statement to let it be the truth, because he was in jail owing to defendant's falsehood about White County, Texas; that after the witness was released, he frequently returned to the jail in order to see the prisoner; that on one of these occasions the prisoner stated that he was going to make letters represent the parties who did the killing and he wanted the witness to tell him what would be done with a certain letter; that he would let A, B, C, and D represent the parties; that A should represent the man who held the horses, and he wanted to know what would be done with him; that subsequently the defendant wrote a note to Smith Shaw, who he said would get him out of his difficulty, and gave it to the witness to carry.    The note, which the witness delivered, was identified, and is as follows:

" May 29.    Mr. Shaw I am in trouble and if you doant help me out I will get you in trouble, you know the offer that you made me at the Bord pile, where you cum whare we was making boards my life is at stake cum to my help I dont want to get you in trouble.    But if you dont you know I can anything that this man tells you you may rely on if so giv him awl the help you can.    Yours respect.,
" J. M. SIMMONS."

The witness continued that after his return from Shaw's house the prisoner told him that Frank Stafford, whom he had always feared, had given him away; that the defendant stated that he held the horses while Smith and Dick Shaw went to General Tucker's house and Dick Shaw did the shooting; that the first agreement was, that Smith Shaw, Dick Shaw, Stafford, and himself should go together and kill him; that he and Stafford were to receive from the Shaws three hundred and seventy-five dollars in money and a

gray mare, worth one hundred and twenty-five dollars; that Stafford took a chill when they reached the bridge over Chuquetonchee Creek, and would go no further, but that he and the Shaws went on. He then described the assassination of General Tucker and asked the witness to visit Grenada County, where the prisoner's father and brother were, and to go by way of Shaws' and raise men to get him out.

R. O. Reynolds, J. M. Finley, and Eugene Sykes were successively introduced as witnesses of the State, and testified to a number of confessions made by the defendant. First, when Reynolds, accompanied by J. R. McIntosh, who was said to be the leading spirit in the prosecution and one of the counsel, went to the jail, the prisoner stated that he, with Smith Shaw, Richard Shaw, Frank Stafford, and James Fitzgerald, killed General Tucker; that they met at the bridge across Chuquetonchee Creek on the road below Houston and Okalona; that he rode behind James Fitzgerald and Frank Stafford behind Dick Shaw; that when they got to the place he and Smith Shaw held the horses; the others went on and did the killing, and that Stafford shot General Tucker with his rifle. The prisoner's subsequent confession differed like these in detail but agreed in the fact that he and the Shaws killed General Tucker; and afterward he wrote out his confession and signed it "J. M. Simmons, prisoner." At one of the later interviews McIntosh said to the prisoner, "Matt, I have said to you that if you would tell me the truth about the killing of General Tucker, I would do what I could to save you, but you have lied to me, and now I tell you I don't want to hear any more statements from you." The prisoner then proceeded to make another confession to the purport of his former statements. Finally the prisoner was brought out for hearing on a writ of *habeas corpus*, when he retracted all his confessions. At an interview after he was taken back to the jail he stated that he had retracted his confessions because Reuben Davis told him that he could save him if he made the retraction and that he could never be convicted of perjury, because the State could not prove which of his statements was true.

After testimony as to conversations between the Shaws and the

accused before the murder and letters passing between them, the State asked a witness if Dick Shaw did not, after the assassination of General Tucker, go to where the defendant and his family were living, inquire for him, and leave a note for him, and what Dick Shaw said and what the defendant did with the note. Under the defendant's objection, the witness answered that Shaw asked for the defendant and said that if he knew where he was he would write to him; that if Matt Simmons wanted any horse to go to Houston, where the grand jury was, his father would let him have one. Other conversations of Dick Shaw after the killing and in the absence of the prisoner were given in evidence under the latter's objections, and he reserved exceptions; and with some other evidence of conspiracy the State closed its case. The defendant offered the testimony of his father, sister, Smith Shaw, and some other witnesses, that he was at home on the other side of Chuquetonchee Creek at the time General Tucker was killed. Fitzgerald and the two Shaws denied all the statements about their connection with the killing of General Tucker, and each was shown, by the testimony of other witnesses, to have been absent from the scene of the assassination when it occurred. Mrs. Frank Stafford testified that her child was sick and that she was up all night and that her husband did not go to Okalona.

The defendant was introduced to testify in his own behalf, and after detailing his confessions, he stated that they were all false; that he had been arrested by persons in a rough manner; that they handcuffed and chained him; that he was placed in a grated cell and Chafin was put in with him; that he was urged to make a confession to save himself; that the jail officials and prosecuting attorneys counseled him to confess and save himself, and so he made the confessions, and as he knew nothing of the facts, he varied his confessions as he learned the circumstances, trying his utmost to fix one that would get credit. The defendant was then asked by his counsel what was the condition of his mind at the time of the alleged confessions and whether the confessions were made by him under the influence of hope or fear, produced by any person in authority or engaged in this prosecution, and these questions were

repeated as to each specific confession. The court, on the State's objection, refused to let him answer any of these questions, and the defendant reserved his exceptions.    Reuben Davis testified that he had not seen the defendant at the time he retracted his confession; and the defendant closed his case.    In rebuttal, the State introduced the officials of the jail and the attorneys for the prosecution, and their testimony was to the effect that the prisoner had not been harshly treated, but the inducements had been held out to him, as set forth in their former testimony.

For the State, the court instructed as follows:    1. The defendant is presumed to be innocent until he is proved to be guilty, and this presumption extends to the whole crime and all its parts; and the guilt of the accused must be fully and conclusively established to a moral certainty. No preponderance of evidence is sufficient to warrant conviction unless it is so convincing as to generate full belief to the exclusion of every reasonable doubt. But reasonable doubt is not vague conjecture nor mere supposition or hypothesis, but it is such doubt as reasonably arises out of the testimony—doubt for which a reason can be given. Mathematical or demonstrable certainty is not required. While the testimony should be equal to that which controls and decides the conduct of men in the highest and most important affairs of life, all that is necessary to enable a jury to return a verdict of guilty is, after a comparison and consideration of all the testimony, to believe conscientiously that it establishes the guilt of the defendant as charged beyond a reasonable doubt.    2. The jury may believe that part of a confession which criminates the prisoner and reject that part which is in his favor, if they see sufficient grounds for so doing.    3. The doubt which should induce a jury to withhold a verdict of guilty should be such a doubt as would reasonably arise from the testimony before them.    4. The jury are the sole judges of the credibility of witnesses, and if they believe any witness has sworn falsely in regard to any material matter, they may disbelieve such witness altogether and they may take into consideration all circumstances, and may believe one witness and disbelieve another altogether.    5. Every person who is accessory to murder before the fact is deemed a principal, and if

the jury believe from the evidence beyond a reasonable doubt that J. M. Simmons and others agreed to take the life of General W. F. Tucker and in pursuance of such agreement went to his house, and one of them shot and killed General Tucker, it matters not who fired the shot, all are equally guilty. 6. If from the evidence the jury believe the prisoner wrote out a confession, and that it has been shown in the evidence beyond a reasonable doubt that such confession was the spontaneous and voluntary act of the prisoner, such confession would be and is entitled to great consideration. 7. If from the evidence, beyond a reasonable doubt, the prisoner made an oral confession, which was free and voluntary and not induced by fear or hope or any undue or improper influence, and such confession has been stated by a witness on the stand in the words of the prisoner, or in language of similar import, then such confession is entitled to be considered by the jury in making up their verdict. 8. It is the duty of every citizen to aid in the detection of crime and the arrest of the criminal, and the jury has no right to infer an improper motive from the manifestation of zeal on the part of any citizen in detecting and punishing crime. 9. The *corpus delicti* consists in cases of homicide of two fundamental and necessary facts, 1st, the death; 2d, the existence of criminal agency as its cause. The two facts having been satisfactorily proved, the connection of the prisoner with the crime may be established by his confession alone. And if General Tucker came to his death by violence, the jury may convict the accused on his confession if corroborated or made in court that he was the guilty agent. It is for the jury to determine what weight they will give to the confession under all the evidence adduced in the case. 10. If the witness made a promise to the accused, but afterward withdrew the promise, and cautioned the accused against making any confession, then any confession made after the promise to aid the prisoner was withdrawn, and the caution given is admissible in evidence and must be considered by the jury in making up their verdict. 11. If the death of General W. F. Tucker has been fully established, then the criminal act and agency of the defendant may be established by his acts and conduct, and the jury may take into consideration all

the facts and circumstances in determining such agency. 12. Where the proposal to confess comes from the prisoner the confession is represented to be voluntary unless under the evidence as a whole, a reasonable doubt is raised as to its being voluntary. 13. The defense of an alibi, though in itself most reasonable and just, it being sometimes the only defense that an innocent person can make against an unfounded charge, is liable to an objection the truth and force of which have been exemplified in so many actual instances as to occasion it to be viewed with peculiar suspicion and distrust. This objection consists in its great liability to abuse growing out of the ease with which it may be fabricated and sustained by false testimony and the difficulty with which such fraud and perjury are detected. 14. Mere admonition to a prisoner to tell the truth does not vitiate the confession, and an appeal to tell the truth, if he tells anything, does not exclude the confession where there was no promise of reward offered or threat of violence made. 15. The State is not bound to offer evidence which is merely cumulative in its character, and when any fact or set of facts necessary to be proved by the State has been testified to by one or more witnesses, the State is not bound to introduce further testimony as to the fact or facts to be proved, but may rely upon the testimony already introduced, and no unfavorable presumption arises from its so doing. 16. Flight is a circumstance which the jury may consider in making up their verdict, and, combined with other facts, it may afford strong evidence of guilt.

For the defendant, the court gave the following charges, the words in brackets being added by the court to the instructions as asked and those in *italics* taken from them : " 1. If the jury have a reasonable doubt of the defendant's guilt arising from all the testimony they must acquit." " 2. It is essential that the testimony shall be of a conclusive nature, and unless the evidence in this case is so conclusive as to exclude every reasonable doubt, the jury must acquit." " 3. Evidence is always indefinite and inconclusive. When it raises no more than a definite probability in favor of the fact of guilt, as compared with some definite probability against it, whether the precise proposition can or cannot be ascertained, and it is only of a

conclusive nature when the probability in favor of the hypothesis exceeds all limits of *an arithmetical or* [a] moral nature." Charges 4, 5, and 6 were as to the burden of proof and a reasonable doubt. "7. The defendant is on trial under an indictment for murder, and it is the duty of the State to show his guilt beyond all reasonable doubt, and to do this *the State has relied mainly on* [by] the confessions of the defendant, *and to do this* it is incumbent on the State to show that the confessions were obtained without the promise of reward or influence of fear; and if the jury has a reasonable doubt of whether inducements of favor or fear were used to obtain them, they must disregard the confessions and acquit, unless the other testimony alone is sufficient to establish defendant's guilt beyond all reasonable doubt." "8. Anything done by officers or prosecuting attorneys in charge of the defendant reasonably tending to hold out a hope or promise of reward, or benefit, or punishment, or injury, for the failure to confess is in the law unwarrantable inducements, and if they induce confessions render the confessions incompetent evidence." "9. Confessions of guilt made by a defendant to other persons are the lowest *grade of confessions* [order of proof] and unless sustained by corroborating circumstances, are insufficient to convict, and unless the jury believe that the confessions of the defendant were made when the mind was entirely uninfluenced by hopes or fears, they must disregard the same as evidence in the case." Charges 10 to 14 inclusive, where upon the competency and value of confessions, as, for instance, "If the evidence shows that the prisoner, at the time he made the confessions, *was not wholly free and did not so consider himself* [was under the influence of fear or promises of reward], the confessions will not be voluntary and the jury should disregard them and reject them." "15. The imperfections of the medium of transmission of oral confessions are to be considered by the jury and if they believe from the evidence that the witnesses who obtained and reported the confessions of the defendant in this case were under the influence of pecuniary interest, partizanism, sympathy with the deceased, or anxiety to convict, it *will be authorized to disregard their testimony* [may take such facts into considera-

tion in making up their verdict] *altogether or to* [and] give *it* [their testimony] such weight as under all the circumstances the jury may believe it entitled to." " 16. It is the duty of the State to establish the *corpus delicti,* that is, not only the death of W. F. Tucker but *the defendants'* [some criminal] agency in the crime and unless the *corpus delicti* in both these respects is proved, confessions by themselves are not enough to sustain a conviction." Charges 17 to 22 inclusive were also upon confessions. " 23. A presumption cannot be based on a presumption, and every presumption tending to prove the defendant guilty that is considered by the jury must be based on some fact proved in evidence beyond every reasonable doubt and every presumption against the prisoner which does not rest on some fact so established must be disregarded by the jury." " 24. The corroborative facts relied on by the prosecution in this case to support the alleged confessions of the defendant must, in order that they may be considered by the jury as sustaining or tending to sustain said alleged confessions, be themselves established by proof independent of any confessions and beyond every reasonable doubt." Charge 25 was upon confessions. " 26. If the jury are satisfied that one of two individuals killed General W. F. Tucker, but are not certain beyond every reasonable doubt from the evidence whether the one or the other was the guilty agent, then they must acquit this defendant unless they believe they acted together or aided and abetted each other." " 27. The credibility of a self-deserving confession of guilt is a question of fact resting on the presumption that no prudent man would declare an untruth to his own disadvantage, yet the jury must remember that even among prudent men an obvious interest against which a party makes an admission may be greatly overbalanced by a superior secret interest of which nobody knows but the the declarant. The truthfulness, therefore, of an apparently self-deserving statement is a presumption of fact depending upon all the circumstances of the case. They must inquire whether the confession was really self-deserving, and whether made with the desire to create a sensation or from motives of hope or fear, for to the credibility of confessions of guilt it is essential that they should have been made with a

sincere intention of telling the truth." "28. If there is a proba-
bility of the innocence of the defendant then a reasonable doubt of
his guilt exists and the jury must find a verdict of not guilty." "29.
If *by the exigencies of this case the jury are reduced to the painful and
difficult duty of* weighing the testimony of the one side against
that of the other, it is the jury's duty to recollect that the pre-
sumption of law *as well as of justice is against* [in favor of] the
*prosecutor* [defendant's innocence] and therefore if the evidence on
both sides is equal, or nearly so, they should incline to the side of
*mercy,* the defendant, and should acquit." "30. If a well-founded
doubt of the defendant's guilt can even be entertained from all the
evidence, the jury must acquit." "31. The law presumes the de-
fendant innocent of the crime charged against him, and this pre-
sumption of innocence extends to the whole case and attends the
prisoner through every stage of his trial and cannot be overcome *by
evidence which only renders it reasonably certain that the defendant
is guilty, but only by* [unless by] evidence which renders it certain be-
yond any reasonable doubt that the defendant is guilty as charged."
"32. An alibi is not required to be established beyond a reasonable
doubt, but if from the testimony taken as a whole there is a reason-
able doubt as to the alibi, the jury must acquit, *and in considering
this question of alibi the distance of the defendant's residence from the
scene of the crime at the time of its commission is a circumstance to
which the defendant is entitled and which should be considered by the
jury.*" "33. The presumption or implication which in a criminal
case the law deduces from an establishment of particular facts has
no other force than to dispense with the further proof of the thing
presumed unless something in the testimony either theretofore or
thereafter offered suggests, doubt of the existence of the presumed
fact; but the moment that is engendered, if it be as to a fact neces-
sary to conviction, the State must establish the fact, and the obliga-
tion to do this rests continuously upon the State. The accused
need do nothing save repose upon the presumption of innocence,
with which the law has clothed him, and claim the doubts which all
the testimony has evolved."

The following charges were asked by the defendant and refused:

" 34. No number of inconclusive dependent circumstances can by their concurrence furnish conclusive proof of the defendant's guilt. Nor can any number of slight and dependent circumstances become stronger proof than each one is of defendant's guilt." " 35. Every citizen has a right to demand that he should not be convicted of an offense without the testimony of at least one credible witness to the fact that he committed the offense, or what is equivalent thereto." " 36. If the jury believe from the evidence that the prosecution was in possession of testimony on any material point in this case which has been withheld from the jury, then the jury have a right to consider this fact and to presume that the testimony was detrimental to the prosecution."

*W. T. Houston,* for the appellant, argued the case orally and in writing.

1. It was erroneous to refuse to permit the defendant prior to the introduction of evidence of his confessions to prove that they were improperly obtained and were inadmissible. *Bame* v. *State,* 36 Texas 361; *Nicholson* v. *State,* 28 Md. 153; 1 Den. C. C. 329. The confessions may have been the result of promises or hopes held out by the officers and prosecuting attorneys. 1 Greenl. Evid., §§ 219, 221, 223; 1 Phill. Evid. 551. Confessions must be excluded unless it affirmatively appears that they were made freely and in all sincerity. 2 Starkie Evid. 49. Confessions made with the hope that they will work the prisoner's release are inadmissible. *The King* v. *Lambe,* 2 Leach 636; 2 Hawk. P. C. Ch. 46, § 34.

2. Testimony that Dick Shaw shortly after the murder told how it was done was not admissible. *Browning* v. *State,* 30 Miss. 670; *Lynes* v. *State,* 36 Miss. 625; *Garrard* v. *State,* 50 Miss. 150; *Bell's Case,* 7 Gratt. 741.

This is no part of the *res gestæ. People* v. *Stanley,* 47 Cal. 117. Even the flight of a conspirator is no evidence against a defendant. 1 Greenl. Evid., § 111. Dick Shaw's acts and conversations a month after the assassination could not be proved so as to affect the defendant, even if the conspiracy had been established or its purpose had been consummated by the murder. *Browning* v. *State,* 30 Miss.

670 ; *Lynes* v. *State*, 36 Miss. 625 ; *Garrard* v. *State*, 50 Miss. 150 ; *People* v. *Stanley*, 47 Cal. 117 ; *Bell's Case*, 7 Gratt. 641 ; 1 Greenl. Evid., § 111 ; Greenl. Evid., § 94.

3. To an innocent man an alibi is nearly always an essential defense, and to throw discredit on this is to bring innocence into disesteem. The testimony of the defendant while on the witness stand as to the condition of his mind at the time of his confessions should have been admitted. 7 Allen 149 ; *Fisk* v. *The Inhabitants of Chester*, 8 Gray 508 ; 44 Maine 18 ; 1 Greenl. Evid., § 52. These authorities hold that the frame or condition of the defendant's mind is a proper subject of inquiry. *Babcock* v. *People*, 15 Hun. 355 ; *Kerraine* v. *The People*, 60 N. Y. 228 ; 6 Texas 118 ; *Green* v. *State*, 53 Ind. 420 ; *White* v. *State*, 53 Ind. 596 ; Wharton Crim. Evid., §§ 43 and 456.

*T. C. Catchings*, Attorney General, for the State, argued the case orally.

CAMPBELL, C. J., delivered the opinion of the court.

Most of the numerous exceptions reserved by the appellant and assigned for error are without merit. All have been considered but only a few of them will be specially remarked upon.

When it was proposed by the State to introduce evidence of confessions of his guilt by the appellant, he asked that a preliminary investigation should be made by the court, to ascertain if the alleged confessions were made under such circumstances as to make them admissible in evidence. The court refused to pursue this course, and stated that all the evidence as to the confessions and the circumstances attending them might be introduced, and if it should appear that they were improper to be received as evidence they would be excluded. Evidence of confessions of his guilt by the appellant was received, and the jury was instructed at the instance of the State and the appellant as to the admissibility of confessions as evidence.

We are strongly impressed with the belief that some of the confessions introduced as evidence were incompetent, and should have been excluded. The inquiry whether confessions were made under such circumstances as to make them competent evidence is a pre-

liminary one to be made by the court, in which a full investigation should be had, with a view to determine the competency of the proposed confessions, and it is for the judge, after such investigation, to determine whether the confession shall be admitted in evidence or not.   If satisfied, after hearing all the evidence pertinent to the inquiry, that the confession is admissible, it should be allowed to be related to the jury, whose province it is to determine the value as evidence but not the competency of a confession.   Unless it plainly appears that a proposed confession was made in such manner as to make it competent evidence, it should not be received, and, if admitted, and in the progress of the trial it should be made to appear that it was obtained under such circumstances as to render it incompetent as evidence, it should be then excluded by the court.

If the preliminary investigation which was proper had been made by the judge as to the proposed confessions to enable him to decide as to their admissibility, it is not to be doubted that specific inquiry on that issue would have distinctly drawn the line between competent and incompetent confessions, but with the testimony delivered as it was we find it difficult to determine as to this.

It seems to us that the confessions testified to by the witness Chafin are competent evidence, but that those testified to by Reynolds and Sykes and Finley, prior to the time when McIntosh announced to the prisoner his purpose not to do anything for him, are incompetent.   We deduce from the record that McIntosh, who was of counsel for the prosecution, and " the leading spirit " in it, as stated, had told the prisoner, if he would tell what he knew of the murder of General Tucker, he (McIntosh) would do all he could to save him ; and it was after this that the prisoner made a. confession to Reynolds, and subsequently repeated it with variations to Reynolds and Sykes, and as we read the record, Mr. Finley was present on one occasion when the other gentlemen just named were before the prisoner in jail, and testified to the same confession testified to by them.   It was probably on the occasion of the third interview between Reynolds and the prisoner that McIntosh declared to the prisoner his purpose not to try to do anything for him.   Confessions made by the appellant after this are competent,

as affected by the promise of McIntosh.  Inasmuch as the correct practice was not observed, and we are satisfied that some confessions of the prisoner were received as evidence which were inadmissible, but are not able to determine satisfactorily from the record as to the competency of some of the confessions testified to, we will not particularize, but content ourselves with announcing the true rule in such cases, and leave its application to the circuit court in the new trial which must be had.  Every confession by the prisoner before the withdrawal of the promise of the prosecuting attorney, McIntosh, to him above mentioned, and which may be fairly traceable to that promise as an inciting influence, should be excluded ; and so of any which, by the familiar rules of law, may be incompetent from any other cause, which may have inspired such hope or fear as to render confessions inadmissible.

Evidence was improperly admitted as to conversations of Dick Shaw after the killing of General Tucker.

The prisoner was denied the right to testify before the jury as to the state of his mind at the time of making the confessions introduced in evidence.  He should have been permitted to testify on this subject.  It was material to his defense that the jury should hear what he felt and thought as explanatory of his confessions. If they were sincere and true, they authorized his conviction.  If they were false, and made for a purpose, if prompted by hope or fear, the jury should have had an opportunity to learn it, so as to place a proper value on them.  And who so capable of informing them as the person, the state of whose mind was the subject of investigation ?  He was a competent witness for all purposes, and peculiarly qualified to testify as to the operations of his own mind.

We find no error in any of the instructions for the State, except the thirteenth, further than the impropriety common to both sides of instructing the jury as to the admissibility of confessions.  As before remarked, the jury had nothing to do with the competency, but only with the sufficiency of confessions as evidence.

The thirteenth instruction for the State is in effect that the defense of an *alibi* is " to be viewed with peculiar suspicion and distrust."  In *Nelms* v. *State*, 58 Miss. 362, an instruction was held bad

which declared that the defense of an *alibi* was to be viewed with caution and rigid scrutiny. The implication of the opinion in that case is that the instruction would have been free from objection if it had informed the jury that an *alibi* is a good defense when fully made out; but the decision cannot be invoked as authority for the proposition that an instruction which expressly discredits the defense of an *alibi* is allowable. We do not think it is. This defense is like any other, and should be left to the jury uninfluenced by instructions calculated to excite prejudice against it or throw discredit upon it.

What would be thought of an instruction to the jury that apparent danger or reasonable apprehension, when relied on by the accused in an indictment for homicide, is a defense liable to abuse growing out of the ease with which it may be fabricated, and sustained by false testimony, and the difficulty with which such fraud and perjury are detected, and, therefore, this defense is to be viewed with peculiar suspicion and distrust? There is no doubt that many guilty men have escaped by fabricating the defense of self-defense, and supporting it by perjury; but it is not allowable because of this to instruct a jury that self-defense is to be viewed with peculiar suspicion and distrust. Nor is it proper for the court to disparage the defense of an *alibi*.

We have carefully considered the thirty-six instructions asked by the appellant, and find no error in the modification made by the court in those given, or in the refusal of the three which were refused.

*Judgment reversed and new trial granted.*