## JOHN WALKER v. THE STATE.

### No. 2720.   Decided March 18, 1903.

**1.—Murder—Evidence.**

On a trial for murder where there was no evidence that defendant was afraid that deceased would prosecute him for violating the local option law, it was inadmissible to prove that some time before the killing local option was put into effect in the county by the commissioners court; that defendant sold intoxicants to deceased, and told him to "lie low, the grand jury meets soon." Whereupon the deceased remarked, "I won't swear a lie for nobody." Such evidence was not admissible to show motive on the part of defendant, it appearing that defendant killed deceased in a difficulty in which deceased was the aggressor, and which had no relation to local option.

**2.—Same.**

On a trial for murder, where there was nothing to connect such evidence with the killing, it was error to permit testimony to the effect that, prior to the killing, defendant, just before his local option cases were to be tried, stated to the witness that he would rather have a murder case against him than a local option case in that county. It was prejudicial in the extreme.

**3.—Same—Charge.**

Where the court admitted the illegal testimony mentioned above, a charge attempting to control it by relegating it to the question of motive on the part of defendant, assumed the fact of a motive for the killing, and was upon the weight of evidence.

Appeal from the District Court of Eastland.   Tried below before Hon. N. R. Lindsey.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Will Kliner, on the 23d day of December, 1902, by shooting him with a pistol.

Deceased was a hot tamale vendor, defendant a keeper of a whisky and beer saloon called a "hop joint." Deceased was in the joint and was very drunk and abusive to defendant. They had a misunderstanding about 50 or 60 cents, which deceased offered defendant and defendant refused to accept. Deceased's conduct was most violent, abusive and threatening. Defendant tried to get him to go home and leave him alone. Finally defendant and his porter closed up the house, and all

the parties left, deceased following defendant and continuing his abusive conduct, drawing a knife and threatening to cut defendant's head off. Defendant testified that when he got into the alley he thought deceased had left him, and was going home. But he says: "After I had gone back down the alley, and had just gotten in the gate, deceased caught me by the coat collar from behind with his left hand. I turned, and as I turned I saw deceased pulling his right hand out of his right coat pocket. He raised it in a position as if to strike. I jumped and jerked back, pulled my pistol, and it went off three times, and kept going off."

There was no person other than defendant present at the time of the shooting. Deceased was shot several times and died immediately.

The points discussed in the opinion need no additional statement.

*D. G. Hunt,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Conviction of murder in the second degree, penalty assessed being confinement in the penitentiary for a term of fifteen years.

The State was permitted to prove by the widow of deceased, Mrs. Kliner, that, about two weeks before her husband was killed, appellant sold him some bottled beer. She further testified in this connection: "We drove up in front of his hop joint, and I stayed in the buggy, while he got out, went into the house, and directly he and Walker returned to the buggy. Walker handed Will the beer, and said: 'Will, you must lie low now. The grand jury meets soon.' My husband remarked, 'I won't swear a lie for nobody.' Defendant then dropped his head, looked down, turned around, and went back into the house." She further testified: "On Saturday, before my husband was killed, my husband and myself drove up in front of Walker's place of business and stopped. My husband got out, went into the house, and shortly afterwards he and defendant returned to the buggy, and defendant handed my husband a pint of whisky, which my husband paid defendant for." Numerous objections were urged to the introduction of this testimony— among others, that these acts constituted other offenses and collateral transactions which tended to shed no light upon the question at issue, and were prejudicial. The court qualifies this bill by stating "that the evidence was offered for the purpose of showing a motive on the part of defendant to kill Kliner, and the jury were told that they could not consider it for any other purpose." The State was further permitted to introduce in evidence the minutes of the county commissioners court, showing the putting into effect of local option in Eastland County. This was also objected to for various reasons. The court explains this bill by stating "that the evidence was offered in connection with the evidence of Mrs. Kliner as to defendant's statement to deceased that he must lie low, as the grand jury would meet soon, and the jury was informed at

the time that they could only consider the fact of local option being in force in Eastland County for the purpose of showing a motive on the part of defendant to kill deceased, and that they would consider it for no other purpose." This testimony was clearly inadmissible. The homicide occurred on the night of the 23d of December. These matters occurred long prior to the killing, and were in no way connected with it. Extraneous facts and crimes are sometimes admissible when they go to show the intent, develop the res gestae, or connect defendant with the crime for which he is being tried. Walker and deceased, Kliner, were friends, and had been for quite a length of time. On the occasion of the difficulty, Kliner was drinking, and, some of the witnesses say, quite drunk. He was very abusive and aggressive in his conduct towards appellant, threatening to kill him and using violence and epithets toward him. Appellant sought to avoid and pacify deceased, but was followed by deceased. He left his place of business, closing the door, and requested his porter to carry deceased in one direction, while he (appellant) went in the opposite direction. Deceased insisted, and followed him up. Appellant returned to the lot in the rear of his business house while pursued by deceased. On their return to the rear of the building the homicide occurred. There was no eyewitness to the transaction, and it was at night. Appellant's statement and evidence claim self-defense from aggressive movements, acts, and demonstrations of deceased. Deceased was shown to be a violent and dangerous man, having previously killed Purcell. All the witnesses who testify in regard to his character show that when drinking he was a violent and dangerous man, and one who would likely execute a threat. There is nothing in the record tending to show appellant was afraid deceased would prosecute him for violating the local option law. In fact, he seemed to be accustomed to these prosecutions. Therefore we hold the testimony in no way tended to throw any light on this transaction, and only served to prejudice the minds of the jury against accused.

Another bill of exceptions recites that while witness Bollinger was testifying he was permitted to state: "I know John Walker [defendant]. Have known him for two years. Some time prior to the killing of Kliner—I don't remember the exact time—I had a conversation with him in the town of Cisco, Texas. He called me out from the barber shop, and said to me he would rather have a murder case against him than a whisky case in Eastland County. This was just before Walker's local option cases were to come up in the county court." Various objections were urged to the introduction of this testimony. It was certainly very damaging, and without any apparent connection with the homicide. It showed him to be a violator of the local option law, and his dread of prosecutions for violating said law. It may have left, and doubtless did leave, the impression on the jury that he had less compunctions of conscience in taking human life, and less dread of a prosecution for that heinous offense, than for violating the local option law. A severer criticism of his character could not well be imagined. It was

prejudicial in the extreme. The court undertook to control all this testimony by relegating it to the question of motive. This was a charge on the weight of evidence. It assumes the fact that the motive for the killing was to avoid the prosecution which might be predicated on the evidence of deceased, without a fact in the record to connect those transactions with the homicide.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.