Aszman *v.* The State.

Filed April 22, 1890.

———————◆———————

No. 15,473.

Aszman *v.* The State.

CRIMINAL LAW.—*Murder.*—*Premeditated Malice.*—In order that there may be such premeditated malice as will make a homicide murder in the first degree, the thought of taking life must have been consciously conceived in the mind, the conception must have been meditated upon, and a deliberate determination formed to do the act.

SAME.—*Murder.*—*Essence of the Crime.*—*What Constitutes.*—*Mental Capacity for Deliberation.*—As it is of the very essence of the crime that there should have been time and opportunity for deliberation or premeditation after the mind has consciously formed the design to take life, there must have been the mental capacity to think deliberately upon and determine rationally in respect to the nature and consequences of the act which follows.

SAME.—*Voluntary Intoxication.*—*May be Considered when Intent is an Element of Crime.*—While voluntary intoxication does not excuse or palliate crime, yet where the essence of a crime depends upon the intent with which an act was done, or where an essential ingredient of the crime consists in the doing of an unlawful act, with a deliberate and premeditated purpose, the mental condition of the accused, whether occa-

sioned by voluntary intoxication or otherwise, is an important factor to be considered.

SAME.— *Voluntary Intoxication.—Instruction to Jury.*—It was error to refuse to instruct the jury that while voluntary intoxication is no excuse or palliation for any crime actually committed, yet if they had a reasonable doubt whether the accused had sufficient mental capacity to think deliberately upon and rationally to determine to kill the deceased, he could not be found guilty of murder in the first degree, although such inability was the result of intoxication.

SAME.—*Intoxication.—Deliberative Power Unimpaired by.—Degree of Murder.—Non-Reduction of.*—Mere intoxication, in the absence of such mental incapacity resulting therefrom as renders one who takes the life of another incapable of thinking deliberately, and meditating rationally upon the purpose to take human life, and which leaves him with full power to know the quality of his act and to abstain from doing it, can not of itself be regarded as sufficient to reduce a homicide from murder in the first to murder in the second degree.

SAME.—*Defence of Insanity.—Discrediting of by Trial Court.*—The trial court should not make any statements to the jury which are designed to cast discredit or suspicion upon any defence which is recognized by the law as legitimate, and which an accused person is making in apparent good faith. This rule applies alike to the defences of insanity, self-defence or *alibi. Sawyer v. State,* 35 Ind. 80, disapproved. ELLIOTT, J., and COFFEY, J., dissent.

SAME.—*Individual Responsibility of Juror.—Presumptions of Innocence.—Instruction.*—When the request is seasonably made, unless the subject of the individual responsibility of each juror has been covered in some other charge, the court should not refuse to instruct the jury that " The law presumes the defendant to be innocent of any crime. And this presumption continues in his favor throughout the trial of the cause; and you can not find the accused guilty of any of the crimes covered by the indictment until the evidence in the cause satisfies you beyond a reasonable doubt of his guilt. And so long as you, or any of you, have a reasonable doubt as to the existence of any of the several elements necessary to constitute the several crimes above defined, the accused can not be convicted of such crime."

SAME.—*Presumption of Innocence.—Indictment.—Instruction.*—It will be assumed that the jury understand from the general charge of the court that the law surrounds the accused with the presumption of innocence notwithstanding the return of an indictment against him, and that the presumption continues until it is overcome by the evidence. It must be assumed also that jurors are men of ordinary intelligence, and possessed of the information common to well-informed citizens. Hence it was not error to refuse to instruct the jury that the mere returning of an indictment raised no presumption of the guilt of the accused, and

that there could be no conviction until they were satisfied beyond a reasonable doubt of his guilt without reference to the nature of the indictment.

From the Marion Criminal Court.

*J. S. Duncan* and *C. W. Smith*, for appellant.

*L. T. Michener*, Attorney General, *J. L. Mitchell*, Prosecuting Attorney, and *J. H. Gillett*, for the State.

MITCHELL, C. J.—The grand jury of Marion county presented, in an indictment duly returned into the criminal court, that Edward Aszman, on a day named, did feloniously, purposely, and with premeditated malice, kill and murder Bertha Elff, a human being. The defendant pleaded generally, " not guilty," and specially in writing, that he was of unsound mind when the offence was committed. He was convicted of murder in the first degree and sentenced to suffer death.

The homicide occurred on the evening of August 24th, 1889. There was evidence tending to show that the accused came from Chicago, where he had been at work for some weeks, to Indianapolis about twelve days before the homicide. There was also evidence tending to show that while at Chicago the accused exhibited some peculiarities of conduct which indicated that he was laboring under some mental delusion or hallucination, as for example, that he indulged the unfounded belief that he was being pursued by persons armed with long knives. It also appeared that he was addicted to the use of intoxicating drink. The State attributed all his peculiar conduct to a condition brought on by excessive indulgence in intoxicating drink; while on his behalf it was claimed that his conduct, coupled with the circumstances under which the homicide was committed, and the attempt of the accused to commit suicide, all indicated such a state of mental disorder as rendered him irresponsible, or at least incapable of deliberate thought, or rational determination. The accused seems to have maintained re-

lations of intimacy with Bertha Elff, the victim of the homicide, to whose society he in some way laid claim to the exclusion of other men. The evidence tends to show that he had been drinking to excess during the day, and that while walking with the deceased during the evening, the subject of her receiving attentions from another man was under discussion. She denied the right of the accused to question her conduct in the respects mentioned, whereupon he inflicted a mortal wound upon her by cutting her across the throat with his knife, and then attempted to take his own life by inflicting a long, deep wound across his own throat with the knife. She was found dead from the wound inflicted, as stated above, in a few minutes afterwards, and he was found within fifty feet of her body in an unconscious condition, with a self-inflicted wound from which the evidence tends to show death would have ensued but for timely surgical aid. It is not claimed that there was any evidence tending to show that the accused had formed the design to take the life of the deceased prior to the evening on which the homicide occurred, and that he voluntarily became intoxicated in order to prepare himself for the execution of his premeditated and previously formed purpose. There was evidence to which an instruction relating to the mental condition of the accused, as affected by voluntary intoxication, at the time the homicidal act was committed, was applicable. The only instruction given by the court relating to that feature of the case was the following:

"Frenzy, arising solely from the passions of anger and jealousy, no matter how furious, is not insanity. A man with ordinary will power, which is unimpaired by disease, is required by law to govern and control his passions. If he yields to wicked passions, and purposely and maliciously slays another, he can not escape the penalty prescribed by law on the ground of mental incapacity. That state of mind, caused by wicked and ungovernable passions, resulting not from mental lesion, but solely from evil passion, constitutes

that mental condition which the law abhors, and to which the term malice is applied. The condition of mind which usually and immediately follows the excessive use of alcoholic liquors, is not the unsoundness of mind meant by our law. Voluntary drunkenness does not even palliate or excuse."

The thirteenth and fourteenth instructions asked by the accused are, in legal effect, the same. The fourteenth is as follows:

" While voluntary intoxication is no excuse or palliation for any crime actually committed, yet if upon the whole evidence in this cause you shall have such reasonable doubt whether at the time of the killing—if you shall find from the evidence accused did kill Bertha Elff—he had sufficient mental capacity to deliberately think upon and rationally to determine so to kill deceased, then you can not find him guilty of murder in the first degree, although such inability was the result of intoxication."

The propriety of the ruling of the court in refusing to give the thirteenth and fourteenth instructions, or either of them, is now before us for consideration.

Section 1904, R. S. 1881, reads as follows: " Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate, any rape, arson, robbery, or burglary, or by administering poison or causing the same to be done, kills any human being, is guilty of murder in the first degree, and, upon conviction thereof," etc. Other sections define murder in the second degree, and declare what shall constitute voluntary and involuntary manslaughter.

The distinction between murder in the first degree and murder in the second degree has been so often stated and is so well understood that it would be useless repetition to reiterate it here. *Fahnestock* v. *State*, 23 Ind. 231 ; *Binns* v. *State*, 66 Ind. 428 . *McDermott* v. *State*, 89 Ind. 187 ; *Koerner* v. *State*, 98 Ind. 7.

It is sufficient to say that in order that there may be such

premeditated malice as will make a homicide murder in the first degree, the thought of taking life must have been consciously conceived in the mind ; the conception must have been meditated upon, and a deliberate determination formed to do the act. Where a homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by deliberate thought or premeditation, although they follow as instantaneously as successive thoughts can follow each other, the perpetrator may be guilty of murder in the first degree. But as it is of the very essence of the crime that there should have been time and opportunity for deliberation or premeditation after the mind has consciously formed the design to take life, it follows as a necessary corollary that there must have been the mental capacity to think deliberately upon, and determine rationally in respect to the nature and consequences of the act which follows. It would be a legal as well as a logical incongruity to hold that the crime of murder in the first degree could only be committed after deliberate thought or premeditated malice, and yet that it might be committed by one who was without mental capacity to think deliberately or determine rationally.

As a matter of course the rule is universal that voluntary intoxication is no excuse for crime, nor does it in any degree mitigate or palliate an offence actually committed. To hold otherwise would unbridle crime and subvert public order. On the contrary, where there is reason to believe that one has conceived the design to commit a crime, and while harboring the unlawful purpose, voluntarily becomes intoxicated in order to blunt his moral sensibilities and nerve himself up to the execution of his preconceived design, the offence is thereby greatly aggravated. *State* v. *Robinson,* 20 W. Va. 713 (43 Am. Rep. 799).

Where, however, the essence of a crime depends upon the intent with which an act was done, or where an essential ingredient of the crime consists in the doing of an unlawful act, with a deliberate and premeditated purpose, the mental

condition of the accused, whether that condition be occasioned by voluntary intoxication or otherwise, is an important factor to be considered. *Smith* v. *Commonwealth*, 1 Duv. 224; *State* v. *Garvey*, 11 Minn. 154. Thus in *Cline* v. *State*, 43 Ohio St. 332, the learned judge, delivering the judgment of the court, said: " Where a person having a desire to do to another an unlawful injury, drinks intoxicating liquors to nerve himself to the commission of the crime, intoxication is held, and properly, to aggravate the offence; but at present the rule that intoxication aggravates crime is confined to cases of that class. * * But in many cases evidence of intoxication is admissible with a view to the question whether a crime has been committed, or where a crime, consisting of degrees, has been committed, such evidence may be important in determining the degree." *Pigman* v. *State*, 14 Ohio, 555; *Lytle* v. *State*, 31 Ohio St. 196; *Davis* v. *State*, 25 Ohio St. 369; *Roberts* v. *People*, 19 Mich. 401; *State* v. *Welch*, 21 Minn. 22. In the application of this principle the Supreme Court of the United States reversed a judgment of conviction of murder in the first degree, in *Hopt* v. *People*, 104 U. S. 631. The court below instructed the jury to the effect that, "A man who voluntarily puts himself in a condition to have no control of his actions, must be held to intend the consequences. The safety of the community requires this rule. Intoxication is so easily counterfeited, and when real is so often resorted to as a means of nerving a person up to the commission of some desperate act, and is withal so inexcusable in itself, that law has never recognized it as an excuse for crime." The accused requested the court to give an instruction similar to that requested and refused in the present case. After asserting the general rule of the common law, that voluntary intoxication affords no excuse, justification, or extenuation of a crime committed under its influence, Mr. Justice GRAY, delivering the judgment of the court, said: " But

when a statute establishing different degrees of murder requires deliberate premeditation in order to constitute murder in the first degree, the question whether the accused is in such a condition of mind, by reason of drunkenness or otherwise, as to be capable of deliberate premeditation, necessarily becomes a material subject of consideration by the jury." *Commonwealth* v. *Dorsey*, 103 Mass. 412 ; *Pirtle* v. *State*, 9 Humph. (Tenn.) 663 ; *Haile* v. *State*, 11 Humph. (Tenn.) 154 ; *Jones* v. *Commonwealth*, 75 Pa. St. 403 ; *Keenan* v. *Commonwealth*, 44 Pa. St. 55 ; *People* v. *Belencia*, 21 Cal. 544 ; *State* v. *Johnson*, 40 Conn. 136 ; Maxwell Crim. Proc., pp. 227–229.

So, in *Buckhannon* v. *Commonwealth*, 86 Ky. 110, the court said : "A deliberate intent to take life is an essential element of murder. Drunkenness as *a fact* may, therefore, be proven as bearing upon its existence or non-existence. It is not admissible upon the ground that it in and of itself excuses or mitigates the crime, because one offence can not justify or palliate another, but because, under the circumstances of the case, it may tend to show that the less and not the greater offence was committed." See, also, *State* v. *Sopher*, 70 Iowa, 494.

In *State* v. *Johnson, supra,* the Supreme Court of Connecticut, in reversing a judgment of conviction of murder in the first degree, the court below having given and refused instructions similar to those involved in the present case, used the following language : "A deliberate intent to take life is an essential element of that offence. The existence of such an intent must be shown as a fact. Implied malice is sufficient at common law to make the offence murder, and under our statute to make it murder in the second degree ; but to constitute murder in the first degree, actual malice must be proved. Upon this question the state of the prisoner's mind is material. In behalf of the defence, insanity, intoxication, or any other fact which tends to prove that the prisoner was incapable of deliberation was competent evidence

for the jury to weigh. Intoxication is admissible in such cases, not as an excuse for crime, nor in mitigation of punishment, but as tending to show that the less and not the greater offence was in fact committed." *State* v. *Johnson*, 41 Conn. 584. *Jones* v. *State*, 29 Ga. 594.

" In those States," says a learned author, " in which murder has been divided by statute into degrees, it has been held that if the accused was intoxicated to such an extent as to deprive him of the power to form a design, the offence could be no more than murder in the second degree." Lawson Insanity, p. 741 ; 1 Whart. Cr. Law, sections 51, 52.

" Drunkenness, we have seen, does not incapacitate one to commit either murder or manslaughter at the common law," says Mr. Bishop, " because, to constitute either, the specific intent to take life need not exist, but general malevolence is sufficient. But where murder is divided by statute into two degrees, and to constitute it in the first degree there must be the specific intent to take life, this specific intent does not in fact exist, and the murder is not in this degree, where one, not meaning to commit homicide, becomes so drunk as to be incapable of intending to do it ; and then in this condition kills a man." Bishop Crim. Law, section 409.

This court, although not always enunciating it with entire accuracy, has constantly recognized the rule declared in the above cases.

Thus, in *Smurr* v. *State*, 88 Ind. 504, where it appeared that the accused was excited by intoxicating drink at the time of the homicide, an instruction was approved as accurately expressing the law in which the jury were told that " Voluntary intoxication is no excuse for crime as long as the offender is capable of conceiving an intelligent design." So, in *Fisher* v. *State*, 64 Ind. 435, a prosecution for larceny, after stating the general rule that voluntary intoxication is no excuse for crime, unless the habit has been indulged to such an extent as to pervert or destroy the mental faculties, the court said : " There are cases which hold that, in prose-

cutions for murder, drunkenness at the time may be shown as affecting the question of premeditation." *Dawson* v. *State,* 16 Ind. 428 ; *Bradley* v. *State,* 31 Ind. 492 ; *Rogers* v. *State,* 33 Ind. 543 ; *Cluck* v. *State,* 40 Ind. 263 ; *Bailey* v. *State,* 26 Ind. 422 ; *Robinson* v. *State,* 113 Ind. 510.

Where a homicide results from the use of a dangerous and deadly weapon, the law implies malice, and an intention to kill from the effective use of the weapon, and, therefore, the crime is presumably murder in the second degree. No degree of mental disturbance produced by voluntary intoxication, will of itself, disconnected from sudden heat or other circumstances, avail to reduce the crime to a lower grade, unless such a diseased condition of the mind has followed the habit of intoxication as to render the accused incapable of distinguishing between right and wrong, or of controlling his conduct when free from the influence of intoxicating drink. But in the absence of evidence either direct or circumstantial, there is no presumption from the mere fact that a homicide was committed, except it be in the perpetration of the offences mentioned in the statute, that it was done with deliberation or premeditated malice. Hence the conclusion logically follows that murder in the first degree, in which, under our statute, premeditated malice is the distinguishing ingredient, can only be committed by one possessed of the mental capacity to deliberate and premeditate, and that a homicide committed by one who was at the time, for any reason, incapacitated to think deliberately, or determine rationally as to the quality, character and consequences of the act, can not be murder in the first degree. *Reg.* v. *Davis,* 14 Cox Crim. Cases, 563 (28 Eng. Rep., Moak's notes, 657).

In order that there may be no misapprehension, and to prevent voluntary intoxication from being used as a cloak to shield those who from sheer wickedness of heart, and regardless of consequences, allow themselves to be driven to the commission of crimes, it should be said that mere intoxication, in the absence of such mental incapacity result-

ing therefrom as renders one who takes the life of another incapable of thinking deliberately and meditating rationally upon the purpose to take human life, and which leaves him with full power to know the quality of his act, and to abstain from doing it, can not of itself be regarded as sufficient to reduce a homicide from murder in the first to murder in the second degree. *Walker* v. *State*, 85 Ala. 7 (7 Am. State Rep. 17); 1 Bishop Crim. Law, section 410. In other words, there must be " the absence of that self-determining power, which in a sane mind renders it conscious of the real nature of its own purposes, and capable of resisting wrong impulses. Where this self-governing power is wanting, whether it is caused by insanity, gross intoxication, or other controlling influences, it can not be said truthfully that the mind is fully conscious of its own purposes, and deliberates or premeditates in the sense of the act describing murder in the first degree." *Jones* v. *Commonwealth, supra.*

Drunkenness can not be considered as an excuse for crime, but may be taken into consideration for the purpose solely of passing on the fact of premeditation, keeping in view the fact that a man may act with premeditation while under the influence of intoxicating liquor, or he may have harbored the design to commit the crime before becoming intoxicated. *People* v. *Williams*, 43 Cal. 344; *State* v. *Robinson*, 20 W. Va. 713 (43 Am. Rep. 799).

It seems scarcely necessary to add that we are not dealing with the question of voluntary intoxication as an excuse for crime, or as rendering the accused criminally irresponsible, but only with intoxication resulting in that degree of mental disturbance or distortion that renders the accused incapable of committing murder in the first degree.

By giving the twelfth instruction the court gave full recognition to the fact that the subject of the voluntary intoxication of the accused was before the jury for consideration. The jury were told, correctly enough, with what abhorrence the law looked upon frenzy, arising solely from jealousy and

anger, and from wicked and ungovernable passions, which did not result from mental lesion. They were also told, with eminent propriety, that the condition of mind which usually and immediately follows the excessive use of alcoholic liquors is not the unsoundness of mind meant by our law, and that voluntary drunkenness did not excuse or palliate crime.

These instructions were all well enough as far as they went, but the question back of all that was, whether drunkenness, if it existed to the extent of depriving the accused of the power of deliberation, might be considered by the jury as disproving an essential ingredient in the crime of murder in the first degree, viz., the deliberate intention to take human life.

When the accused asked the court to instruct the jury that voluntary intoxication might, in case a mental condition had resulted therefrom which incapacitated him from deliberate thought or rational determination, reduce the crime from the highest to a lower grade of murder, the court refused.

The jury were thus left without the means of distinguishing between voluntary intoxication as an excuse for crime, and intoxication as affecting that particular condition of mind necessary to constitute the crime of murder in the first degree.  After admitting evidence tending to show that the accused was in the habit of drinking alcoholic stimulants, and that he had drank to excess on the day of the homicide, the jury were not only told that drunkenness was not only no excuse or palliation for crime, but without any explanation they were left to infer that if it had any effect it was to aggravate the offence.  Either the jury must have excluded the evidence of intoxication from their minds altogether, or they must have given it an effect prejudicial to the accused.  The jury may have believed, as did the court, that although the accused may not have had the mental capacity to think deliberately or determine rationally, yet, if his incapacity resulted from voluntary intoxication, he might be

guilty of murder in the first degree nevertheless. In the absence of any claim of preconceived design, it was therefore prejudicial error to refuse the instruction asked which contains an accurate statement of the law.

The court, of its own motion, charged the jury as follows :

" The defence of insanity is one very frequently made in cases of this kind, and it is one which, I may say to you, should be very carefully scrutinized by the jury. The evidence to this point should be carefully considered and weighed by the jury, for the reason that if the accused was, in truth, insane at the time of the commission of the alleged acts, then he ought not to be punished for such acts. The evidence on this question of insanity ought to be carefully considered by the jury for another reason, and that is, because a due regard for the ends of justice and the peace and the welfare of society demands it, to the end that parties charged with crime may not make use of the plea of insanity as a means to defeat the ends of justice, and a shield to protect them from criminal responsibility in case of violation of law."

This instruction met with unqualified approval in *Sawyer* v. *State,* 35 Ind. 80, and the principle therein enunciated has been referred to approvingly in *Sanders* v. *State,* 94 Ind. 147, and *Butler* v. *State,* 97 Ind. 378.

It can hardly be said to contain the statement of any proposition of law, but is rather in the nature of a general disparagement of the defence of insanity which the accused had pleaded as provided by statute. A case might possibly arise in which such a statement could be appropriately made by the court. As the judgment in the present case must be reversed for other reasons, we do not determine whether or not it constituted reversible error in this case. It is sufficient to say that as at present constituted, the court does not regard with favor any statements by the trial court which are designed to cast discredit or suspicion upon any defence

which is recognized by the law as legitimate, and which an accused person is making in apparent good faith. In this respect we are unable to appreciate any well-grounded distinction between the defence of insanity, self-defence, or *alibi*. *Line* v. *State*, 51 Ind. 172 ; *Sater* v. *State*, 56 Ind. 378 ; *Albin* v. *State*, 63 Ind. 598 ; *Simons* v. *State*, 61 Miss. 243 ; *Dawson* v. *State*, 62 Miss. 241 ; Thompson Trials, section 2433.

In those jurisdictions where judges are permitted to comment upon the weight and value of evidence, it has been held proper for the court to caution the jury concerning a defence which judicial experience has shown to be often attempted by contrivance and ·perjury. *Commonwealth* v. *Webster*, 5 Cush. 295 ; Thompson Trials, section 2434. This rule does not prevail in Indiana. *Unruh* v. *State, ex rel.*, 105 Ind. 117.

At the proper time the court was requested to give instructions numbered 10 and 11, which are in the following language :

" 10. The law presumes the defendant to be innocent of the commission of any crime. And this presumption continues in his favor throughout the trial of the cause, step by step; and you can not find the accused guilty of any of the crimes covered by the indictment until the evidence in the cause satisfies you beyond a reasonable doubt of his guilt. And so long as you, or any one of you, have a reasonable doubt as to the existence of any one of the several elements necessary to constitute the several crimes above defined, the accused can not be convicted of such crime."

" 11. And here the court instructs you that the mere fact that a grand jury has returned an indictment against the accused does not raise any presumption that the accused has been guilty of any crime, and you must not take [the filing of the indictment] as raising any such presumption, until you, and each of you, are satisfied beyond a reasonable doubt, by the evidence here introduced before you, without refer-

ence to the nature of the indictment, that the accused is guilty of some of the grades of homicide covered by this indictment, there can be no conviction."

The court declined to give either of the above, and it is conceded that the subjects embraced therein were not covered by the general charge.

In *Castle* v. *State,* 75 Ind. 146, a judgment of conviction for an assault and battery with intent to commit murder, was reversed for no other reason than the refusal of the court to give an instruction substantially like that numbered 10 above. While we might hesitate to reverse a judgment which was correct in all other respects, we can see no good reason why such an instruction should be refused when seasonably requested, unless the subject of the individual responsibility of each juror has been adequately covered in some other charge.

There was no error in refusing the eleventh charge. It must be assumed that the jury understood from the general charge of the court that the law surrounded the accused with the presumption of innocence notwithstanding the return of an indictment against him, and that that presumption continued until it was overcome by the evidence. It must be assumed that jurors are men of ordinary intelligence, and that they are possessed of the information common to well-informed citizens.

After the most careful consideration of the instructions, we are impressed with the conviction that too many doubtful questions were resolved against the accused, and that prejudicial error may have intervened in the failure of the court to give the jury the instructions requested upon the subject of the mental incapacity of the accused, resulting from voluntary intoxication, to commit the crime of murder in the first degree. A judgment of a court which pronounces the extreme penalty of the law upon a human being, should be free from any error which may have resulted to the prejudice of the person condemned. Lest the

one before us may, for the reasons given, not be, it is reversed. The clerk will make the proper order concerning the appellant.

Filed April 22, 1890.

### SEPARATE OPINION.

ELLIOTT, J.—The nineteenth instruction disapproved by the court is copied word for word from the instruction given in the case of *Sawyer* v. *State*, .35 Ind. 80. WORDEN, J., delivering the unanimous opinion of the court in that case, said : " The observations of the court in that respect meet our unqualified approval. As stated by the court, where the defence of insanity is interposed to a criminal prosecution, the evidence relating to it should be carefully and intelligently scrutinized and considered, for the double reason that a really insane person should not be convicted, and a really sane one should not be acquitted and suffered to go unpunished for his crimes, on the false theory of insanity." This is, as I am unalterably convinced, sound sense and sound law. If the decision stood alone I should be heartily for sustaining it, for I believe that it is intrinsically right. But it does not stand alone, for it has been repeatedly approved. *Butler* v. *State*, 97 Ind. 378 ; *Sanders* v. *State*, 94 Ind. 147 ; *Guetig* v. *State*, 63 Ind. 278. Other courts have declared a like doctrine. *People* v. *Bumberger*, 45 Cal. 650 ; *People* v. *Dennis*, 39 Cal. 625 ; *Sellick's Case*, 1 City Hall Rec. 185 ; *McKee* v. *People*, 36 N. Y. 113. In one of the cases cited the jury were instructed, as to the defence of insanity, that : " From its nature it ought to be received in all cases by jurors with the greatest degree of caution and circumspection." In another case the jury were instructed, concerning the plea of insanity, that : " It is a plea sometimes resorted to in cases where aggravated crimes have been committed under circumstances which afford full proof of overt acts, and render hopeless all other means of evading punishment. While, therefore, it ought to be received as not less full and

complete than it is a humane defence, when satisfactorily established, it yet should be examined with great care lest an ingenious counterfeit of the malady furnish protection to guilt." It is, as is everywhere laid down, the duty of a court to abide by its decisions, unless it is demonstrated that they are against reason, and this rule ought of itself to constrain us to adhere to former decisions, but in this instance I am convinced that the court is departing from a decision not only without reason but against both reason and authority.

The departure is, I deferentially affirm, a step in the wrong direction. Our decisions have already too greatly restricted the rights and duties of trial judges, and I am firmly convinced that it is a mistake to fetter them still more. A trial judge is, as I believe, more than a mere moderator, or a mere rehearser of stereotyped phrases, for it is his right and his duty to give the jury such advice and such cautions as shall assist them in reaching a just conclusion.

That the defence of insanity is one frequently resorted to is a matter of common knowledge, and it is so treated in the text-books and decisions, and yet the instruction before us is condemned simply because the jury are informed that it is a defence that is frequently made. This, as I understand the opinion of the court, is the only infirmity in the instruction. To me it seems an element of strength, not of weakness.

Our statute makes the defence of insanity a peculiar one. Some of the courts hold that it must be established beyond a reasonable doubt, other courts hold that it must be established by a preponderance of the evidence, and still others hold that it is enough if the evidence raises a reasonable doubt of the sanity of the accused, but, while the courts differ upon the points mentioned, they agree that the defence of insanity is a peculiar one, subject to be abused, and meriting rigid scrutiny.

While I dissent from that part of the opinion which dis-

approves the nineteenth instruction, I concur in the conclusion that the judgment should be reversed, for I think that the very able opinion of the court, prepared by the Chief Justice, unanswerably proves that where the element of premeditation is essential to create the crime of murder in the first degree, the accused can not be found guilty of that crime if at the time of the killing he was so completely overcome by intoxication as to be incapable of premeditation.

COFFEY, J., concurs with ELLIOTT, J.

Filed April 22, 1890.