(October 23, 1915.)

STATE, Respondent, v. GUY BUSTER, Appellant.

[152 Pac. 196.]

MURDER—EVIDENCE—PHYSICAL CONDITION OF DECEASED AND DEFENDANT ADMISSIBLE — THREATS WHERE THREATENED PARTY NOT NAMED— DOUBT—HOW SOLVED—MALICE AFORETHOUGHT TO BE PROVED—MANNER OF PRESENTING INSTRUCTIONS TO JURY.

1. *Held,* that the court did not err in permitting the state to introduce evidence of the physical condition of the deceased at the time of the homicide.

2. In homicide cases threats made by defendant are generally admitted for the purpose of proving malice on his part against the deceased with the killing of whom he is charged; and when admissible, their weight or probative force is a question for the jury. The admission of such declarations depends upon the subsequent acts of the defendant, and these acts must be of such a character as to lead the jury to believe beyond a reasonable doubt, when considered in connection with all of the testimony and the circumstances surrounding the commission of the crime, that the defendant at the time he made the declaration had in mind the deceased as the person against whom he entertained malice.

On evidence of threats of accused or of person injured or killed, see note in 17 L. R. A. 654.

As to evidence of antecedent threats on trial for homicide, see note in 3 L. R. A., N. S., 523.

3.　Where subsequent acts of the defendant clearly show that his prior declarations had no reference to such subsequent acts, it is error for the court to admit those declarations. And this is particularly true when, by reason of such declarations, another and distinct criminal offense is proved.

4.　The true rule is that the circumstances themselves in connection with the threat must, with a reasonable degree of certainty, establish the fact that appellant alluded to or directed the threat in question against the deceased, before it can be admitted in evidence against him; and, if the circumstances in proof leave this matter in doubt, that doubt must be solved in favor of the defendant and the threat excluded.

[As to evidence of threats by deceased, in defense of homicide, see note in 89 Am. St. Rep. 692.]

5.　In the absence of proof of malice aforethought, a conviction of murder in the second degree cannot be sustained.

6.　*Held,* under the facts in this case, that the court committed reversible error in permitting the testimony of witness Weese to go to the jury.

7.　Sec. 7886, Rev. Codes, provides: "Either party may present to the court any written charge and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused, the court must indorse and sign its decision. If part be given and part refused, the court must distinguish, showing by the indorsement what part of the charge was given and what part refused."

8.　Sec. 7902, Rev. Codes, as amended, Sess. Laws 1911, p. 48, provides: "Upon retiring for deliberation, the jury may take with them all exhibits and all papers (except depositions) which have been received in evidence in the cause, or copies of such public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession. They may also take with them the written instructions given and notes of the testimony or other proceedings on the trial, taken by themselves or any of them, but none taken by any other person."

9.　*Held,* that it was reversible error for the court to permit instructions to go to the jury which it had theretofore concluded were not correct or pertinent, as such action was seriously prejudicial to the defendant.

APPEAL from the District Court of the Sixth Judicial District for Lemhi County. Hon. J. M. Stevens, Judge.

Defendant was prosecuted on the charge of murder in the first degree, and convicted of murder in the second degree; sentenced to serve a term of imprisonment in the state penitentiary for not less than ten nor more than thirty years. From the judgment and the order denying motion for new trial, defendant appealed. *Reversed.*

F. J. Cowen, W. H. Holden and E. M. Holden, for Appellant.

The court erred in permitting testimony to be introduced in behalf of the state, in regard to the alleged difficulty between appellant and Simon Weese, which was not even remotely associated with any circumstance connected with the homicide. It was highly and seriously prejudicial and clearly inadmissible. (*State v. Lancaster,* 10 Ida. 410, 78 Pac. 1081.)

If the danger of appellant was either apparent or real, he was justified, and the judgment of conviction and order denying appellant a new trial should be reversed. (*State v. McGreevey,* 17 Ida. 453, 105 Pac. 1047.)

J. H. Peterson, Atty. Genl., T. C. Coffin and Herbert Wing, Assts., and John E. Rees, for Respondent.

Where the issue of self-defense is raised, the prosecution has the right to show the relative physical strength of the deceased and the defendant. (*People v. Smith,* 151 Cal. 619, 91 Pac. 511; *Wilkins v. State,* 98 Ala. 1, 13 So. 312; *Gunter v. State,* 111 Ala. 23, 56 Am. St. 17, 20 So. 632; *Hinch v. State,* 25 Ga. 699; *State v. Beckner,* 194 Mo. 281, 91 S. W. 892, 3 L. R. A., N. S., 535; *Mott v. State* (Tex. Cr.), 51 S. W. 368.)

The deceased does not need to be named in the threat in order to make the threat admissible in evidence. (*People v. Webster,* 139 N. Y. 73, 34 N. E. 730; *State v. Larkins,* 5 Ida. 200, 47 Pac. 945; *Benedict v. State,* 14 Wis. 423; *Jones v. State,* 76 Ala. 8; *Jordan v. State,* 79 Ala. 9; *Ford v. State,* 71 Ala. 385; *State v. Guy,* 69 Mo. 430.)

Malice having been shown, its continuation down to the time of the killing is to be presumed, in the absence of evi-

dence to the contrary. (1 Wharton's Crim. Law (11th ed.),
sec. 605; *State v. Johnson,* 23 N. C. (1 Ired. L.) 354, 35 Am.
Dec. 742; *State v. Tilly,* 25 N. C. (3 Ired. L.) 424.)

The presumption of the intent to kill raised by the wilful
and intentional use of a deadly weapon is properly stated
in the state's requested instruction No. 10. (*State v. Privitt,*
175 Mo. 207, 75 S. W. 457, at 458; *State v. Darling,* 199 Mo.
168, 97 S. W. 592, at 596.)

To say that the defendant was put in fear of his life by an
assault with a light cane, or was put in fear of great bodily
harm thereby, is not tenable nor believable. (*Carico v. Commonwealth,* 7 Bush (70 Ky.), 124, 127.)

BUDGE, J.—The defendant was charged by information
filed May 1, 1913, by the prosecuting attorney of Lemhi
county with the crime of murder in the first degree, resulting
from the death of Henry Brown near the village of North
Fork, in Lemhi county, on April 17, 1915.

On October 10, 1913, after a trial in the district court, a
verdict was rendered by the jury finding the defendant guilty
of murder in the second degree. On October 17, 1913, the
defendant was sentenced to imprisonment in the state penitentiary for not less than ten nor more than thirty years.

Notice of intention to move for new trial and motion for
new trial were thereafter duly made and by the court overruled. This is an appeal from the order of the court overruling defendant's motion for new trial and from the judgment.

The facts, briefly stated, are as follows:

On the night of the homicide the appellant met Mrs. Allie
Agee at his sister's home near what is known as the North
Fork postoffice; and shortly thereafter, on the same evening,
he met her again on the highway not far from his sister's
home. The appellant, in company with Mrs. Agee and her
son, walked down the road in the direction of the home of
the deceased, and when within about three-fourths of a mile
of the Brown residence they met the deceased coming in the
direction of North Fork postoffice. There is some slight conflict in the testimony given by Mrs. Agee and her son. How-

ever, in the main they both agree on what happened at the time of the homicide.

Mrs. Agee testified that she was walking between her son and the appellant; that her son saw Mr. Brown first and that he was walking toward them; that they walked along until they met him, whereupon the appellant stepped back a little so the deceased might pass and said, "Good evening"; that the deceased walked along and when he got even with appellant he raised his cane and said to the appellant, "Take a walk"; that the appellant stepped back a few steps and the deceased began hitting at him with a cane and said, "Take a walk" several times, and continued hitting at the appellant; that the appellant said "Don't, Mr. Brown," or words to that effect, several times; that the deceased kept on striking appellant, and appellant finally staggered from the effect of the blows and immediately thereafter fired the pistol two or more times, and when he fired the last shot the deceased fell to the ground; that she never heard the appellant make any remarks about Mr. Brown expressing a feeling of enmity toward him.

Walter Agee testified that when he first saw Mr. Brown he was rising to his feet; that he was "kinder sitting on his heels"; that he had a cane in his hand when the witness first saw him; that he (the witness) could not distinctly see, but it looked to him as if Mr. Brown was carrying the cane about the center; that he had hold of the cane at the lower end just a few feet before he reached them; that when Mr. Brown came up to where they were the appellant said, "Good evening, Mr. Brown"; that Mr. Brown stepped up and struck him and said, "You take a walk, young man"; that Mr. Brown hit the appellant around the head and shoulders and continued striking at him while the appellant was going backward saying, "Don't, Mr. Brown"; that Mr. Brown continued striking until the cane broke and then the witness heard the shots and Mr. Brown fell; that he did not see the cane when it broke, but heard it break; that after the cane broke Mr. Brown continued striking the defendant with the end he held in his hand; that appellant was on the upper side

of the road at the time of the shooting; and that the witness saw the appellant stagger backward while being struck with the cane held by the deceased.

The appellant, immediately after the homicide, returned to his home at North Fork and telephoned the sheriff, inform-. ing him that he had shot the deceased. He was subsequently arrested by the sheriff at his home and, together with the sheriff, Dr. Hanmer and Mr. Dobler, proceeded to the place of the homicide.

The sheriff, at the trial, testified, among other things, that they found the piece of cane in the hand of the deceased lying under him, and the other piece of the cane was back some twelve feet from the deceased down the road in the direction from which he had come.

Dr. Hanmer testified, among other things, that the appellant said upon the occasion of their visit to the scene of the homicide that he was hurt over the head and on his arm, and that he made an examination to ascertain the extent of appellant's injuries, and found a bruise and a few hours later a blue and black spot on the left temple and a bruise on the left forearm, and that the arm was slightly swollen.

There is some other testimony in the record that corroborates in part the testimony given by the witnesses Agee, which we do not deem necessary to recite in this statement of the facts.

Counsel for appellant, in their brief, rely upon nine specifications of error. However, as the first three assignments of error were not insisted upon during the argument before this court, it will be unnecessary to discuss them separately. But we have carefully examined each of these assignments of error and find no merit in them.

Appellant contends, in support of his fourth assignment of error, that the court erred in permitting testimony to be introduced over the objection of the appellant of the physical condition of the deceased at the time of the homicide, for the reason that the state failed to prove that appellant had knowledge of the deceased's physical condition at that time. This objection, however, has been determined adversely to

counsel's contention in the case of *State v. Crea,* 10 Ida. 88, 76 Pac. 1013, where the court held that "The correct rule in such cases is that the strength and physical condition of the deceased and the defendant at the time of the homicide may be shown." (See, also, *People v. Webster,* 139 N. Y. 73, 34 N. E. 730; *Gunter v. State,* 111 Ala. 23, 56 Am. St. 17, 20 So. 632; *Mott v. State* (Tex. Cr.), 51 S. W. 368; *Wilkins v. State,* 98 Ala. 1, 13 So. 312; *Hinch v. State,* 25 Ga. 699; and *State v. Beckner,* 194 Mo. 281, 91 S. W. 892, 3 L. R. A., N. S., 535.) It therefore follows that the court did not err in the admission of this proof.

Appellant's fifth assignment of error involves the same question as that relied upon in the fourth, which we have just disposed of.

Appellant contends, under his sixth assignment of error, that the court erred in permitting testimony to be introduced in behalf of the state in regard to an alleged difficulty between appellant and one Simon Weese, a witness for the state, who testified, *inter alia,* that he had a conversation with the appellant a day before the killing, near the North Fork post-office; that Mr. Brown's name was mentioned along toward the last part of the conversation; that the appellant came and said to him, " 'Are you working?' I says, 'Yes,' and finally he says, 'Do you think the ram will work?' and I says, 'Yes, it ought to; it has worked before,' and I says, 'Well, I believe I will have a drink and light my pipe before I go up there and go to calking in the flume,' and so I went on and was standing looking up in the flume; that was about all the conversation we had just then. At the time I was looking up at the flume he says, 'Weese,' then I got it a couple or three times. He [defendant] says, 'I will learn you to call me a pimp,' and I told him that I never called him a pimp, and he says, 'You have been talking about me to Mr. Brown and Mrs. Agee.' I says, 'I never said nothing about you to Mr. Brown, but I told Mr. Brown that Mrs. Agee must be very soft or have a soft place about her to talk to a young man like Guy' [meaning the defendant]. Then he says, 'Weese, I hated to hit an old man like you but I had it to do.'

He says, 'You are not the only one I have got to round up; I have got several more and some of them will get it a damn sight worse than you did.' ''

Counsel for appellant objected to the introduction of this testimony, for the reason that it was not connected in any manner with the charge upon which appellant was tried; and that it was prejudicial to appellant, and calculated to create a feeling of deep dislike or even hatred of him in the minds of the jury. It amounted to another charge against the appellant, and suggested to the jury that he was a loathsome, despised and hated creature.

In homicide cases, threats made by the defendant are generally admitted for the purpose of proving malice on his part against the deceased with the killing of whom he is charged; and when admissible, their weight or probative force is a question for the jury. The admission of such declarations depends upon the subsequent acts of the defendant, and these acts must be of such a character as to lead the jury to believe beyond a reasonable doubt, when considered in connection with all of the testimony and the circumstances surrounding the commission of the crime, that the defendant at the time he made the declarations had in mind the deceased as the person against whom he entertained malice. Thus where the subsequent acts of the defendant clearly show that his prior declarations had no reference to such subsequent acts, it is error for the court to admit those declarations in evidence. And this is particularly true when, by reason of the admission of such declarations, another and distinct criminal offense is proved (*Walker v. State*, 44 Tex. Cr. 569, 72 S. W. 997); or where it affirmatively appears that the incident itself would not tend to prove any feeling of enmity on the part of the appellant toward the deceased, such as to warrant the jury in inferring that the subsequent homicide was malicious and premeditated; and that the particular violence threatened was not against the deceased personally, but was a general declaration, and not of such a character as to indicate that the appellant intended to take the life of the deceased. On the other hand, had it been established that the

deceased was one of a class against whom the threat was directed, or that the appellant within a reasonable time after making the threat attacked the deceased, a different rule would apply. (*Bird v. United States,* 180 U. S. 356, 21 Sup. Ct. 403, 45 L. ed. 570.)

The mere fact that appellant did not state in his conversation with Weese that the deceased was one of the several men who were to be punished "a damn sight worse than" he had punished Weese, would not make his declaration inadmissible (*State* v. *Larkins,* 5 Ida. 200, 47 Pac. 945; *Benedict v. State,* 14 Wis. 423; *Jones v. State,* 76 Ala. 8; *Jordan v. State,* 79 Ala. 9; *Ford v. State,* 71 Ala. 385), could we reconcile that declaration with the subsequent acts of the appellant. But the evidence in this case wholly fails to show that at the time the appellant and Weese had their altercation, the appellant had the deceased in mind or that he entertained malice toward him when he made the declaration. This evidence clearly indicates that appellant's grievance was based solely upon alleged false reports which he claimed had been carried to the deceased and Mrs. Agee by Weese, and that those who carried such reports were the persons whom appellant had in mind and the deceased was not one of them.

In the case of *Holley v. State,* 39 Tex. Cr. 301, on rehearing, pp. 307, 308 (46 S. W. 39), it was said: "We think the true rule is that the circumstances themselves, in connection with the threat, must with a reasonable degree of certainty establish the fact that appellant alluded to or directed the threat in question against deceased, before it can be admitted in evidence against him; and, if the circumstances in proof leave this matter in doubt, that doubt must be solved in favor of the defendant, and the threat must be excluded." (See, also, *Godwin v. State,* 38 Tex. Cr. 466, 43 S. W. 336.)

The evidence connected with the homicide shows, and we think conclusively, that the appellant was not the aggressor; that he sought to avoid trouble with the deceased; that he was attacked by the deceased in the night-time while he was rightfully upon the public highway, without any provocation or justification; that he was beaten over the head with a for-

midable, though not neecssarily deadly, weapon in the hands
of the deceased; and that he was justified in defending him-
self against the attack.

The witness Weese was permitted to testify to a separate
and distinct offense and to relate the conversation between
him and the appellant that he had no reference to the deceased,
all of which, we think, would tend to prejudice the appellant
in the minds of the jury. And while the general rule is that
extraneous facts and crimes are sometimes admissible when
they go to show the intent, develop the *res gestae,* or connect
th defendant with the crime for which he is being tried,
we are of the opinion that the testimony elicited from wit-
ness Weese failed to come within this rule. Moreover, that
such testimony was equivalent to informing the jury that in
the opinion of the court appellant only a day before the fatal
encounter had made a threat to take the life of the deceased,
and it was calculated to supplement all of the testimony of
the state's witnesses in an effort to establish the fact that
the appellant provoked the assault for the purpose of killing
the deceased. Such testimony was harmful, and calculated
to prejudice appellant as to his theory of self-defense before
the jury. (*Casteel v. State,* 73 Ark. 152, 83 S. W. 953; *State
v. Swain,* 68 Mo. 605.)

After a careful consideration of all the evidence in this
case, we do not feel warranted in holding that the declaration
as testified to by witness Weese, if made by appellant, was
competent proof of malice or premeditation on his part to
take the life of the deceased; and in the absence of proof of
malice aforethought, a conviction of murder in the second
degree could not be sustained. The only theory upon which
the admission of this declaration could be urged is that it
established malice against the deceased.

Under the facts in this case we think it was reversible error
for the court to permit the testimony of witness Weese to go
to the jury.

Appellant's seventh and eighth assignments of error in-
volve instructions Nos. 3, 7, 10, 12 and an unnumbered but
what is commonly understood as a stock instruction directing

the attention of the jury to the appearance of the witnesses on the witness-stand, their manner of testifying, etc.; but we find no reason for reversing the judgment on account of the giving of these instructions.

However, upon an examination of the instructions, as a whole, given by the court to the jury, we find that certain instructions were prepared by the attorneys for the state and certain instructions by the attorneys for the appellant. The trial judge disregarded, entirely, sec. 7886, Rev. Codes, which provides, among other things: "Either party may present to the court any written charge and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused, the court must indorse and sign its decision. If part be given and part refused, the court must distinguish, showing by the indorsement what part of the charge was given and what part refused," and sec. 7902, Rev. Codes, as amended, Sess. Laws 1911, p. 48, which provides: "Upon retiring for deliberation, the jury may take with them all exhibits and all papers (except depositions) which have been received in evidence in the cause, or copies of such public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession. They may also take with them the written instructions given and notes of the testimony or other proceedings on the trial, taken by themselves or any of them, but none taken by any other person."

In this case, upon presentation to the court of the instructions by the parties, such instructions as the court concluded were not correct or pertinent were not withdrawn from the jury, neither was the decision of the court indorsed and signed upon the instructions as provided by the above-quoted section. The instructions as presented by the parties were pinned or added to the court's instructions, and a lead-pencil mark or scroll was made through such of the instructions, no doubt, as the trial court concluded were not correct or pertinent, and in this condition they were sent into the jury-room. The jury, therefore, had the benefit of all of the in-

structions offered by the state or by the appellant as well as the court's instructions, together with numerous citations of authority, with a scroll or pencil-mark drawn through some of the instructions, which would naturally draw the attention of the jury to the very instructions that the trial court had concluded were not correct and should not be given. This was no doubt occasioned by the press of official business; but was, nevertheless, as we view it, prejudicial to the rights of the appellant.

The ninth assignment of error involves the insufficiency of the evidence to support the verdict and judgment of conviction. From the conclusions reached in this case it will be necessary that a new trial be ordered; and for that reason we will not further comment upon the evidence.

On account of errors in the admission of testimony and in permitting the jury to have possession of instructions that the trial court had refused, it becomes our duty to reverse the judgment and grant a new trial; and it is so ordered.

Sullivan, C. J., and Morgan, J., concur.