(No. 6709. December 6, 1939.)

STATE, Respondent, v. JONES FRANK, Appellant.

[97 Pac. (2d) 410.]

Leo McCarty, for Appellant.

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Respondent.

BUDGE, J.—Appellant, Jones Frank, was charged with and found guilty of murder in the first degree and sentenced to life imprisonment in the Idaho State Penitentiary. This appeal was taken from the judgment of conviction.

The evidence discloses that deceased, an Indian woman, married to appellant for about one year, and appellant were at their ranch home in an intoxicated condition at 8 o'clock A. M. March 21, 1938, at which time Elsie Rankin, a married daughter of appellant, and her husband, stopped at the Frank home. At this time Mary Frances, the deceased, had a cut on her eyebrow which was bleeding. Elsie Rankin and her husband went to Alpowa fishing and returned to the Frank home just before noon to secure a fish net from the woodshed. At this time appellant was standing on the back porch and was so "drunk" he could not go down the steps, and the deceased was sitting in the kitchen, dressed, "drunker" than before, but her physical condition was otherwise unchanged, except that the cut had stopped bleeding. After procuring the net Elsie Rankin and her husband went to Webb and left there about a quarter of four, picked up Alfred Paul at Lapwai, and the girls Catherine Frances and Rachel Frank, about one-fourth mile below the Frank home and they all went fishing. At this time, about 4 o'clock, they did not

stop at the Frank house, saw neither Mary Frances or Jones Frank and observed no automobiles or persons around the Frank home. The party returned from fishing to the Frank home a little after eight in the evening and found the house dark and the doors locked. Elsie Rankin with her key unlocked the door and went in and lighting matches found appellant lying on the dining room floor, fully dressed and asleep, saw blood on the floor and found Mary Frances in a bedroom lying on her back on the floor, nude. Elsie Rankin immediately called Catherine Frances and the two entered the house and upon examination found that Mary Frances was dead. Without awakening appellant they left the house, locked the door and informed the deputy sheriff Joe Yeager, who returned to the house with them. Appellant was not then in the dining room, but upon opening the bedroom door the body of Mary Frances Frank was found on the floor in the same position as formerly except that she had been covered with a quilt and appellant was found in bed covered with bed clothing. The Deputy Sheriff Yeager then made appellant get up and put on his shoes and appellant stated he did not know what the trouble was and that his wife had fallen out of bed and hurt herself. Appellant was taken to Lewiston by Yeager and Elsie Rankin was left to see that no one entered the house. Yeager returned with the sheriff and they, together with Elsie Rankin, entered and found the body of deceased in the same position in which it was first discovered. Deceased's hair had been cut off and her body was a mass of wounds, bruises and lacerations. The head showed softness of scalp and the head and face were swollen and bruised in their entirety. Lacerations at several points in the frontal portion of the head and face exposed the bone. The forearms and hands were almost a solid mass of bruises and lacerations. The shoulders, neck, torso, chest, arms, knees, ankles, thighs and sides were covered with bruises. On the back of each hand were puncture wounds, the right hand showing a bone fracture. From the condition of the body it appeared that a variety of forces had been applied. The cause of death was traumatic shock. A pair of scissors was found lying on the floor fifteen or sixteen inches from the

body toward the dining room and an eight inch pointed file was found on the dining room table with the sharp end covered with one and one-half to two inches of blood and what appeared to be a little flesh. A tom-tom stick was found in the dining room, shattered and with blood and hair upon it. Ladies clothing was scattered about the house, rumpled and torn. Blood was found all around on the floor of the dining room, on the buffet, walls and door, and the blood in the dining room appeared to have had a body dragged through it across the floor toward the bedroom.

The testimony of appellant was to the effect he was at home with deceased all during the day of March 21, 1939, and that both were drinking. He stated that on the morning of March 21st his wife was drunk and had fallen against the stove cutting her lips and eye. He distinctly remembered the occurrences of the day that his daughter and her husband came early in the morning and later in the afternoon, the last time to get a fish net. He stated that during the afternoon he and his wife were on the porch and that he told deceased he was going in and take a good rest, that he "passed out" on the porch and when he awoke it was dark, that he groped for the door; found it closed and crawled in because he could not stand; that he then lay down on the floor in the dining room; that he did not see Elsie or Catherine come in and that when he awoke and walked into his room he found his wife lying on the floor with no dress on and everything scattered; that he covered his wife with a quilt and went to bed; that later he got up and felt his wife, found she was dead and went back to bed. He stated that when he came in from the porch there was blood all over the dining room floor as he crawled into the house. While appellant denied that he ever struck his wife and denied that his hands were swollen the next day or when arrested, there is evidence that both appellant's hands were swollen so badly on the 22d of March that he could not close either of them and that his knuckles were skinned. There is also evidence that on March 4th appellant chased Lizzie Jabeth and her husband from his house, locked the door, and as the Jabeths were leaving they heard Mary Frances scream for help and heard appellant say if he did not kill her then he

was going to kill her some of these days. The Deputy Sheriff Yeager was called on the 4th of March and returned to the Frank home with the Jabeths and found Mary Frances all bloody with no clothes on and her teeth knocked out and no one was at the house except appellant and Mary Frances. There is testimony of various other members of the family that Mary Frances was seen on different occasions when she had been beaten up and that she had left her home on several occasions to avoid trouble with her husband. There is evidence of the daughter Catherine Frances who testified that during the night of March 20th she heard Mary Frances say or scream in the bedroom: "Don't do that. Leave me alone." "Stop beating me." "Don't hit me. You are my husband." And there is evidence that on the morning following Mary Frances' lips were swollen, that she was bleeding from a cut over the eye and had blood in her hair and that at this time appellant had blood on his sweat shirt.

Assignments of error one to twelve deal with evidence, admitted over appellant's objection, relating to prior threats of appellant against his wife and prior ill treatment of her. In point of time the threats and ill treatment related by the several witnesses occurred as follows: during the winter immediately previous to March 21st; six weeks before March 21st; and, particularly on March 4th. The evidence was to the effect that appellant and deceased on these occasions had been drunk and deceased had suffered bruises and blackened eyes from appellant's treatment of her. The occurrence of March 4th was to the effect that appellant and deceased being intoxicated, appellant had ejected Lizzie Jabeth and her husband from the house, locked the door and "beaten up" his wife at which time the witnesses heard her scream for help and appellant was heard to say "if I don't kill you now I will some of these days" or words to similar effect and that the Deputy Sheriff Yeager was called immediately and when he arrived he found Mary Frances with a bruise on her lip and several discolorations on her face and that he admonished appellant to stop "beating up" his wife and told him if he didn't quit it he was liable to kill her. Appellant strives to make the point that this line of testimony was improperly

admitted over his objection because it was too remote and showed separate and distinct offenses, not admissible as tending to substantiate the offense of March 21st. The rule existent in this jurisdiction appears to be that prior threats and ill treatment between husband and wife are relevant and admissible to illustrate mental attitude of the accused toward his wife and to prove motive. (30 C. J., p. 184, sec. 408.) In *State v. Muguerza*, 46 Ida. 456, 268 Pac. 1, relating to testimony of threats made by appellant four months previous to an assault upon her husband it was held:

"Prior threats of the accused or evidence of previous trouble are always relevant to illustrate mental attitude of the accused toward the prosecuting witness at the time of the assault. (Underhill on Criminal Evidence, 3rd Ed., p. 773, sec. 544.)"

"But, in any event, appellant was charged with murder of the woman he was holding out as his wife, and relationships shortly prior to the killing, whether pleasant or otherwise, were admissible upon the question of motive. (This is the rule between husband and wife) (30 C. J. 184, sec. 408), so is evidence of feelings of defendant toward victim (30 C. J. 182, 407.) We hold that the evidence of both these witnesses was admissible to prove motive and the court did not err in admitting it." (*State v. McClurg*, 50 Ida. 762, 300 Pac. 898.)

Objection to the remoteness of such evidence is ordinarily regarded as affecting the weight and not the admissibility of the evidence, especially when the conditions continue to the time of the homicide. (30 C. J. 184, 405; *State v. Fox*, 52 Ida. 474, 16 Pac. (2d) 663.)

See also: *State v. Van Vlack*, 57 Ida. 316, 65 Pac. (2d) 736; *State v. Larkins*, 5 Ida. 200, 47 Pac. 945; *State v. Rogers*, 30 Ida. 259, 163 Pac. 912; *State v. Buster*, 28 Ida. 110, at 117, 152 Pac. 196. It does not appear herein that the previous threats and ill treatment were inadmissible for any of the reasons urged.

Appellant's thirteenth assignment of error is to the effect that the court erred in failing to fully instruct the jury after the prosecuting attorney had argued evidence not

in the record. The evidence referred to consists of the words "any more" appearing in the following remarks by the prosecuting attorney:

"But you recall the testimony of Catherine that Monday night, during the night, she was awakened from a sound sleep by the screams of her mother, and that her mother was asking her husband 'Don't hit me any more.'

"Mr. McCarty: I am going to object to that 'any more' on there. That isn't in the record and I take exception to that."

Not only did the court immediately advise the jurors they were the sole and exclusive judges of the evidence, but immediately at the conclusion of his remarks the prosecuting attorney stated to the jury as follows:

"As I stated, gentlemen, you are the sole judges of the testimony, and if any statement as to the facts produced from the witness chair are not in accordance with your remembrance, disregard mine entirely."

Furthermore the court instructed the jury that they were the sole and exclusive judges of the facts and of what facts had or had not been proved by the evidence. No error prejudicial to appellant is made to appear from the remarks of the prosecuting attorney. (*State v. Flitton*, 52 Ida. 374, 15 Pac. (2d) 397; *State v. Smith*, 46 Ida. 8, 265 Pac. 666.)

Assignment of error fifteen is that the court erred in refusing to give appellant's requested instructions numbered three and four, and that the court did not fully instruct in regard to circumstantial evidence. Requested instruction number three is fully covered by instruction number fifteen given by the court. Requested instruction number four in its material part recited:

"but if you find that the deceased died as a result of a blow inflicted by the defendant, he cannot be convicted of murder in any degree unless the jury shall find beyond a reasonable doubt that the blow was delivered with malice aforethought, and with intent to kill the deceased."

The court gave several instructions upon the matters referred to in the foregoing requested instruction. Instruction eighteen fully covers reasonable doubt, and instructions

eight, nine, ten, twelve and thirteen fully cover malice afore-thought, murder in the first and second degrees, manslaughter, and not guilty, properly defining such terms and pointing out to the jury the method of application to the evidence submitted. As the points involved in the requested instructions were fully, completely and correctly covered by the instructions given the court committed no error in refusing to give the requested instructions. (*State v. Monteith,* 53 Ida. 30, 20 Pac. (2d) 1023; *State v. Fox, supra; State v. Copenbarger,* 52 Ida. 441, 16 Pac. (2d) 383; *State v. Pasta,* 44 Ida. 671, 258 Pac. 1075; *State v. George,* 44 Ida. 173, 258 Pac. 551; *State v. Jurko,* 42 Ida. 319, 245 Pac. 685.)

Assignment of error numbered fourteen deals with the insufficiency of the evidence to support the verdict, it being particularly urged that the evidence is insufficient to sustain the verdict of first degree murder as no premeditation or malice on the part of appellant was shown. From a careful examination of the evidence heretofore related it appears beyond doubt that the evidence was susceptible of, and amply sufficient to warrant the jury's finding that malice, premeditation and deliberation existed in the mind of appellant at the time he took the life of the deceased, and that appellant was guilty of murder in the first degree.

No prejudicial error appearing in the record the judgment is affirmed.

Givens, and Holden, JJ., concur.

AILSHIE, C. J., for Modification of Judgment.—I have carefuly examined the evidence in this case, for the purpose of finding anything that would justify the conclusion that the appellant entertained any malice, premeditation or deliberation before or at the time of the commission of the offense of which he was convicted.

The appellant is a Nez Perces Indian and the decedent was a Colville Indian. They had been married about one year and had grown children by previous marriages. They had both been on a protracted drunken spree for some time (three or four weeks), definitely and continuously over two

days; and on the date of the alleged murder were both in a dazed state of intoxication.

It is a well known and recognized fact that the use of alcohol is more demoralizing and dangerous among Indians than with white people. Indeed, it has been so well recognized, for more than a century, that Congress long since enacted prohibitory laws against selling or giving liquor to Indians. (25 U. S. C. A., sec. 241, p. 128, derived from sec. 4, Act of July 9, 1832, chap. 174, 4 Stat. 564.)

Here it is admitted that these people (part of the time accompanied by others) were drinking to such an extent that they couldn't get about from place to place; and that this was true of the decedent, is evidenced by the testimony of Dr. Menne, of the Oregon Medical School, who analyzed the stomach content, blood, and portions of the body of the decedent, and said: "I would conclude that death was due to the multiple injuries and shock, with alcohol as a contributing factor." He further said that he found that *alcohol was present in the stomach and in the blood.* Dr. Speir who performed the autopsy said the "shock" was "traumatic."

Appellant's daughter and decedent's daughter had been living at the Frank home for considerable time, each attending school at Spalding. They each testified that they never saw Frank strike his wife at any time. Arthur Bolen and Maud Bolen lived within 200 or 250 yards of the Frank residence and used the Frank barn, standing thirty to forty yards away, to which they went almost daily. Both testified to being back and forth constantly and almost daily at the Frank house; that they at no time ever saw him strike her although one of them did, on one occasion, hear sounds coming from the house, which made her think that they were having trouble, and that Frank might be beating his wife. At least two witnesses testified to seeing them on the back porch the forenoon of the day on which it is claimed the murder was committed; and appellant was helping to wash some dried blood off his wife's face; and at that time there was no appearance or evidence of any ill feeling between them. On the day before her death some neighbors

called and found that they had both been drinking and they were beating the tom-tom and singing.

Appellant explained that the wound on his wife's face was caused by her falling against the stove and that on another occasion she fell out of the bed; and the evidence of all the witnesses who saw them, including their daughters, is to the effect that she was, and had been, in such a state of intoxication that it was exceedingly difficult for her to walk. All who saw appellant on the day of the homicide say he was beastly drunk.

I call attention to these facts as circumstances tending more strongly to disprove malice, deliberation, and premeditation than they do to show any homicidal deliberation and premeditation.

While voluntary intoxication is no defense to the charge of murder, the state and condition of intoxication is, nevertheless, competent to be considered, in determining the capacity of the defendant to form the homicidal intent, where the evidence fails to disclose any pre-existing malice, premeditation or motive. (*Long v. State,* 109 Ohio St. 77, 141 N. E. 691; *Aszman v. State of Indiana,* 123 Ind. 347, 24 N. E. 123, 8 L. R. A. 33, 37; Underhill, Crim. Ev., 3d ed., sec. 277.) Our statute requires the proof of "malice aforethought" in order to convict a defendant of murder. (I. C. A., sec. 17–1101.) Malice was not shown in this case.

In my opinion, the judgment in this case should be modified, to limit the imprisonment to the maximum allowed in case of conviction of manslaughter and, as so modified, it should be affirmed. I cannot concur in the affirmance of the judgment convicting appellant of first degree murder.

Morgan, J., concurs.